**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| JAVIER SOLIS VARGAS,  ) | No. CV 09-7869-PLA |
| Plaintiff,  ) | |
| v.  ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| Defendant.  ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on October 28, 2009, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on November 12, 2009, and November 19, 2009. Pursuant to the Court's order, the parties filed a Joint Stipulation on August 5, 2010, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on November 25, 1962. [Administrative Record ("AR") at 44-45, 87-88.] He was educated through the fifth grade in Mexico and took three years of English classes in the United States. He has past relevant work experience as a busboy, cook's assistant, cashier, dishwasher, dispatcher, delivery person, and carpenter. [AR at 45-46, 52, 102, 116-18, 136-43.]

Plaintiff filed his application for Disability Insurance Benefits on August 11, 2004, alleging that he has been unable to work since April 17, 2004, due to, among other things, a broken arm, a dislocated and broken shoulder, and confusion. [AR at 96-107.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 68-73, 76, 78-83.] A hearing was held on February 27, 2007, at which plaintiff appeared with counsel and testified, through an interpreter, on his own behalf. A vocational expert also testified. [AR at 38-63.] On November 28, 2007, the ALJ issued a decision denying benefits.[1] [AR at 19-30.] When the Appeals Council denied plaintiff's request for review of the hearing decision on September 23, 2009, the ALJ's decision became the final decision of the Commissioner. [AR at 5-8.] This action followed.


## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

/

---

[1] It also appears that plaintiff applied for Supplemental Security Income ("SSI") payments on July 29, 2004, which were also denied by the ALJ's November 28, 2007, decision. [AR at 22, 65.] Plaintiff does not mention his application for SSI payments in the Joint Stipulation ("JS"). [See JS at 1-2.]

1   In this context, the term "substantial evidence" means "more than a mere scintilla but less
2   than a preponderance -- it is such relevant evidence that a reasonable mind might accept as
3   adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at
4   1257.  When determining whether substantial evidence exists to support the Commissioner's
5   decision, the Court examines the administrative record as a whole, considering adverse as well
6   as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th
7   Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court
8   must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala,
9   53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

10
11   **IV.**

12   **EVALUATION OF DISABILITY**

13   Persons are "disabled" for purposes of receiving Social Security benefits if they are unable
14   to engage in any substantial gainful activity owing to a physical or mental impairment that is
15   expected to result in death or which has lasted or is expected to last for a continuous period of at
16   least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

17
18   **A.    THE FIVE-STEP EVALUATION PROCESS**

19   The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing
20   whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,
21   828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must
22   determine whether the claimant is currently engaged in substantial gainful activity; if so, the
23   claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in
24   substantial gainful activity, the second step requires the Commissioner to determine whether the
25   claimant has a "severe" impairment or combination of impairments significantly limiting his ability
26   to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.
27   If the claimant has a "severe" impairment or combination of impairments, the third step requires
28   the Commissioner to determine whether the impairment or combination of impairments meets or

1   equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

2   Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.

3   If the claimant's impairment or combination of impairments does not meet or equal an impairment

4   in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

5   sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled

6   and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform

7   past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie

8   case of disability is established.  The Commissioner then bears the burden of establishing that the

9   claimant is not disabled, because he can perform other substantial gainful work available in the

10  national economy.   The determination of this issue comprises the fifth and final step in the

11  sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d

12  at 1257.

13

14  **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

15        In this case, at step one, the ALJ concluded that plaintiff engaged in substantial gainful

16  activity since June 2006, when plaintiff began working as a busboy,[2] and thus found plaintiff not

17  disabled "at any time since June 2006 regardless of his medical condition." [AR at 24.]  Plaintiff

18  does not challenge this aspect of the ALJ's decision.  The ALJ then examined whether plaintiff was

19  disabled between April 2004 and June 2006.  [AR at 24.]  At step two, the ALJ concluded that

20  plaintiff has the severe impairments of left shoulder fracture, head trauma, and cervical spine disc

21  protrusions.  [AR at 24, 29.]  At step three, the ALJ concluded that plaintiff's impairments do not

22  meet or equal any of the impairments in the Listing.  [Id.]  The ALJ further found that plaintiff

23  retained the residual functional capacity ("RFC")[3] to: "lift 20 pounds occasionally, lift and carry 10

24  pounds frequently, no overhead reaching with the left upper extremity, and no work requiring

25  _____

26      [2]    The ALJ also determined that plaintiff was insured for Disability Insurance Benefits
     purposes through at least November 28, 2007, the date of the ALJ's decision.  [AR at 23, 29.]

27

28      [3]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations.
     Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

complex tasks," which the ALJ determined "would not significantly erode his ability to perform a full range of light work[4]" or "impair his ability to perform basic work activities."  [AR at 27-29.]  At step four, the ALJ concluded that plaintiff was not able to perform his past relevant work.  [AR at 28-29.]  At step five, using Medical-Vocational Rule 202.17 of the Regulations,[5] the ALJ found that plaintiff is not disabled.  [AR at 28-30.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to properly: (1) consider plaintiff's mental impairment, (2) support the RFC determination with substantial evidence, and (3) assess plaintiff's subjective complaints and credibility.  [JS at 4.]  As explained below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**A.    PLAINTIFF'S MENTAL IMPAIRMENT**

Plaintiff argues that the ALJ erred in finding his mental impairment not severe.  Specifically, plaintiff contends that the ALJ did not properly consider the findings of treating physician Dr. Isaac Regev; the February 11, 2005, mental RFC assessment by state agency physician Dr. R. Tarlyian; and the June 12, 2007, evaluation by examining physician Dr. Rosa Colonna.  [JS at 4-5.]

Plaintiff was hospitalized from April 17, 2004, to May 7, 2004, for a dislocated shoulder, a fractured humerus, and head trauma after he fell approximately 15 feet while he was doing construction work.  [See AR at 56-57, 191-275, 392.]  Hospital reports state that when plaintiff was

---

4    Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).

5    The Medical-Vocational Guidelines provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity, upon which an ALJ may rely in finding that there are a significant number of jobs existing in the national economy that a claimant can perform.  See Heckler v. Campbell, 461 U.S. 458, 461-62, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

first admitted, he "appeared to have altered mental status and he was agitated and combative." [AR at 212.] Plaintiff was seen by a neurosurgeon, at which point it was determined that plaintiff's injuries included small asymptomatic bilateral subdural hematomas for which neurosurgery was deemed to be unnecessary. [Id.] Plaintiff's hospital records further indicate that he suffered from, among other things, post-traumatic amnesia, difficulty sustaining focus of attention, and memory impairment as a result of his head injury. [AR at 213-14.] When plaintiff was discharged from the hospital on May 7, 2004, he was transferred to Rancho Los Amigos National Rehabilitation Center, where he stayed until May 23, 2004, and received physical, occupational, and speech therapy. [See AR at 279-81, 306-10.]

The medical record indicates that plaintiff saw neurologist Dr. Regev at least two times. [AR at 381-89.] Dr. Regev stated that when he examined plaintiff on October 11, 2004, plaintiff complained of frequent headaches and face swelling, poor concentration, memory decrement, blurred vision, shortness of breath, and neck and shoulder pain. [AR at 385-86.] Upon physical examination, plaintiff's musculoskeletal and neurological systems appeared normal, and Dr. Regev noted "no definitive focal neurological deficit." [AR at 386-89.] Dr. Regev found plaintiff "temporarily totally disabled." [AR at 389.] In a report dated April 30, 2005, Dr. Regev stated that when he last saw plaintiff on December 20, 2004, he "had a feeling there was a component of depression in [plaintiff] and ... suggested psychiatric and or psychological treatment." [AR at 381.]

On January 5, 2005, consultative examining psychologist Dr. Harrell Reznick completed a Psychological Evaluation of plaintiff. [AR at 353-59.] Dr. Reznick found that plaintiff "presented with what appeared to be a sub-optimal effort throughout [the] evaluation, resulting in test performances that seem to underestimate his actual levels of functioning." [AR at 353.] He opined that plaintiff can perform simple and repetitive tasks with minimal supervision and appropriate persistence and pace; understand, remember, and carry out simple to moderately complex verbal instructions without difficulty; tolerate ordinary work pressure; interact with others (including the general public) in the workplace; observe basic work and safety standards; and handle his own financial affairs independently. [AR at 358.] Dr. Reznick did not provide any diagnoses for plaintiff. [Id.]

Nonexamining state agency physician Dr. Tarlyian completed a Mental Residual Functional Capacity Assessment on February 11, 2005, finding that plaintiff has moderate limitations in his abilities to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and without an unreasonable number and length of rest periods; and respond appropriately to changes in his work setting. [AR at 375-76.] Dr. Tarlyian further opined that plaintiff can understand, remember and carry out three-step commands as well as simple instructions. [AR at 377.]

On June 12, 2007, consultative psychologist Dr. Colonna completed a Complete Psychological Evaluation of plaintiff, during which she found plaintiff's effort to be "fair." [AR at 425-30.] She found that plaintiff had a cognitive ability falling within the borderline to low average range, but that he has no significant mood or affective disturbances. She opined that plaintiff can understand, remember, and carry out short and simple instructions without difficulty; has a mild inability to understand, remember, and carry out detailed instructions; can make simple work related decisions without special supervision; is able to interact appropriately with others; and appears able to manage his own finances. [AR at 429-30.] Dr. Colonna diagnosed plaintiff with, among other things, alcohol abuse in remission and possible borderline intellectual functioning, and assigned a Global Assessment of Functioning ("GAF") score of 65.[6] [AR at 429.]

A "severe" impairment, or combination of impairments, is defined as one that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520, 416.920. "The Supreme Court has recognized that including a severity inquiry at the second stage of the

---

[6]   A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 32 (4th Ed. 2000). A GAF score from 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 34.

evaluation process permits the [Commissioner] to identify efficiently those claimants whose impairments are so slight that they are unlikely to be found disabled even if the individual's age, education, and experience are considered." Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994) (citing Bowen v. Yuckert, 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)).  However, an overly stringent application of the severity requirement would violate the statute by denying benefits to claimants who meet the statutory definition of "disabled." Corrao, 20 F.3d at 949 (citing Bowen v. Yuckert, 482 U.S. at 156-58 (O'Connor, J., concurring)).  Despite use of the term "severe," most circuits, including the Ninth Circuit, have held that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S. at 153-54); see Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997) ("A claimant's showing at level two that he or she has a severe impairment has been described as 'de minimis'") (citation omitted); see also Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989) (evaluation can stop at step two only when there is no more than minimal effect on ability to work).  An impairment or combination of impairments should be found to be not severe only when the evidence establishes merely a slight abnormality that has no more than a minimal effect on an individual's physical or mental ability to do basic work activities.  See Corrao, 20 F.3d at 949 (citing Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)); see also Social Security Ruling ("SSR")[7] 85-28 ("an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities").

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  See 20 C.F.R. §§ 404.1502, 404.1527,

---

[7]   SSRs do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

416.902, 416.927; see also Lester, 81 F.3d at 830.  Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant.  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen, 80 F.3d at 1285.  Despite the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound to accept the opinion of a treating physician.  However, the ALJ may only give less weight to a treating physician's opinion that conflicts with the medical evidence if the ALJ provides explicit and legitimate reasons for discounting the opinion.  See Lester, 81 F.3d at 830-31 (the opinion of a treating doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record); see also Orn, 495 F.3d at 632-33 ("Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'") (citations omitted); SSR 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected).  Similarly, "the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician."  Lester, 81 F.3d at 830 (quoting Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)).  Even where an examining physician's opinion is contradicted by another doctor, the ALJ must still provide specific and legitimate reasons supported by substantial evidence to properly reject it.  Id. at 830-31 (citing Andrews, 53 F.3d at 1043).

In the decision, the ALJ concluded that plaintiff does not have a severe mental impairment. [AR at 27.]  In reaching that conclusion, the ALJ noted that Dr. Regev "did not find any definitive focal neurological deficits" [AR at 25], Dr. Reznick found that plaintiff put forth "a sub-optimal effort during the formal testing and thus invalidated the results" [AR at 26], and Dr. Colonna found that plaintiff "had only mild limitations in his ability to perform basic work related functions."  [Id.]

Plaintiff's contention that the ALJ failed to properly consider Dr. Colonna's finding that plaintiff's intellectual functioning is borderline to low average lacks merit.  Dr. Colonna's finding that plaintiff may have borderline intellectual functioning does not make this impairment per se disabling.  Rather, "there must be proof of the impairment's disabling severity."  Sample v.

1   _Schweiker_, 694 F.2d 639, 643 (9th Cir. 1982) (quoting _Rhodes v. Schweiker_, 660 F.2d 722, 723

2   (9th Cir. 1981)).  Dr. Colonna stated in her evaluation that plaintiff is only mildly limited by his

3   mental impairment.  Accordingly, the ALJ properly cited Dr. Colonna's Evaluation as indicating that

4   plaintiff has no severe mental impairment.  See _Lusardi v. Astrue_, 350 Fed.Appx. 169, 172 (9th

5   Cir. 2009) (ALJ properly relied on agency psychologists' opinions that the claimant's mental

6   impairment imposed "mild to no functional limitations" in finding the impairment not severe) (citable

7   for its persuasive value pursuant to Ninth Circuit Rule 36-3).

8          The ALJ did not, however, properly consider Dr. Tarlyian's opinion that plaintiff has

9   "moderate" mental limitations in his ability to perform various work related functions.  Specifically,

10  the ALJ did not even mention Dr. Tarlyian's findings in the decision, and there is no indication that

11  the ALJ took this opinion into account when he concluded that plaintiff has no severe mental

12  impairment.  This was error because SSR 96-6p specifically required the ALJ to explain in his

13  decision the weight he afforded the opinions of the state agency consultants.  See SSR 96-6p

14  ("Findings ... made by State agency medical and psychological consultants ... regarding the nature

15  and severity of an individual's impairment(s) must be treated as expert opinion evidence of

16  nonexamining sources," and ALJs "may not ignore these opinions and must explain the weight

17  given to these opinions in their decisions.").  Further, in concluding that plaintiff has no severe

18  mental limitations, the ALJ implicitly rejected Dr. Tarlyian's findings that plaintiff has more than

19  minimal mental limitations in several work related functions.  But he provided no reason for doing

20  so.  "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason,

21  an explanation from the ALJ of the reason why probative evidence has been rejected is required

22  so that ... [the] [C]ourt can determine whether the reasons for rejection were improper."  _Cotter v._

23  _Harris_, 642 F.2d 700, 706-07 (3rd Cir. 1981) (internal citation omitted).  Accordingly, since Dr.

24  Tarlyian's findings of moderate limitations may amount to more than a minimal effect on plaintiff's

25  mental ability to perform basic work activities, remand is warranted so that the ALJ can reconsider

26

27

28

1   the medical evidence, including Dr. Tarlyian's findings, in determining whether plaintiff has a

2   severe mental impairment.[8]

3

4   **B.     THE ALJ'S RFC DETERMINATION**

5          Plaintiff contends that the ALJ's RFC determination is not supported by substantial

6   evidence because the ALJ failed to provide specific and legitimate reasons for rejecting the

7   findings of Dr. Khosrow Tabaddor and Dr. Ludvik Artinyan concerning plaintiff's physical

8   limitations.  [JS at 11-12.]  The Court agrees.

9          Following an examination on October 25, 2004, Dr. Tabaddor completed an Orthopedic

10  Consultation Report describing plaintiff's injury and medical history, present complaints, and

11  physical and neurological condition.  [AR at 391-98.]  Dr. Tabaddor diagnosed plaintiff with status

12  post head trauma with persistent headaches, residuals of sprain cervical spine, residuals of sprain

13  lumbar spine, and status post fracture and dislocation of the left shoulder (per history).  [AR at

14  396.]  Dr. Tabaddor noted that plaintiff had tenderness and pain with movement of his cervical and

15  lumbar spine.  [AR at 393.]  He also noted that plaintiff's left shoulder was mildly swollen and

16  tender, and his range of motion was markedly limited, "almost like a frozen shoulder." [AR at 394,

17  396.]  Dr. Tabaddor opined that plaintiff was "temporarily totally disabled." [AR at 396.]  On June

18  22, 2005, Dr. Tabaddor noted that plaintiff had neck and shoulder pain on and off and that his neck

19  pain had improved some since his last visit.  He opined that plaintiff was still temporarily disabled,

20  but that he was unable to determine plaintiff's permanent disability status at that time.  [AR at 390.]

21         On September 17, 2004, Dr. Artinyan completed an Initial Medical Report, describing

22  plaintiff's subjective complaints, medical history, physical examination, and Dr. Artinyan's

23  diagnostic impressions.  [AR at 402-08.]  Dr. Artinyan diagnosed plaintiff with sprain/strain of the

24  cervical, thoracic, and lumbar spines; traumatic cephalgia; contusion and sprain of the shoulders;

25

26         [8]   The ALJ in the decision also failed to expressly consider Dr. Regev's findings regarding
27  plaintiff's poor concentration and memory decrement, or his "feeling" that plaintiff may be suffering
    from depression.  [AR at 381, 385.]  The ALJ is instructed to reconsider Dr. Regev's findings on
28  remand and to state the weight given to these portions of his opinion.

and left shoulder fracture (per x-ray).  [AR at 406.]  He noted that plaintiff had tenderness, pain, and restricted motion of his shoulders and cervical, thoracic, and lumbar spine.  [AR at 406-07.] Plaintiff was placed on physical therapy, referred to an orthopedic and a neurological consultation, and given "temporary total disability" status.  [AR at 407.]  In an undated Medical Source Statement - Physical, in which Dr. Artinyan stated that he had last examined plaintiff on November 26, 2004, Dr. Artinyan opined that plaintiff was on "total temporary disability" and should never climb, balance, crouch, crawl, or reach; had environmental restrictions with heights, moving machinery, chemicals, and dust; and had a marked limitation of range of motion of his left shoulder.  [AR at 400-01.]  In a Primary Treating Physician Progress Report dated July 22, 2005, Dr. Artinyan noted that plaintiff's subjective complaints included neck pain that increased with movement; slight shoulder pain that increased with pulling, pushing, carrying, and overhead activities; slight mid-to-low back pain that increased with prolonged standing, sitting, bending, and lifting; and headaches that last for days and cause breathing problems.  [AR at 399, 413.]  Dr. Artinyan's objective findings included, among other things, cervical, thoracic, and lumbar spinous process tenderness and left shoulder tenderness with pain and limited range of motion.  [Id.]  Dr. Artinyan referred plaintiff to an internal medicine physician and a psychiatrist.  [AR at 399.]

In the decision, the ALJ rejected Dr. Artinyan's findings that plaintiff was "temporarily totally disabled" under the workers' compensation guidelines as having "limited value" because he "never gave a conclusive or final opinion regarding [plaintiff's] physical abilities."  [AR at 27.]  The ALJ did not mention Dr. Tabaddor's opinion regarding plaintiff's limitations.  The ALJ also emphasized in the decision that the criteria used in the medical reports connected with plaintiff's workers' compensation claim are "not the same as [those] used in determining disability under the Social Security Act and Regulations."  [AR at 25.]  The ALJ also noted that medical reports generated for a workers' compensation claim are "usually to establish causation and apportionment (which are not relevant to the determination of disability under Social Security guidelines)."  [Id.]  For the reasons explained below, the Court finds that the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of Dr. Tabaddor and Dr. Artinyan.

12

First, it was error for the ALJ to fail to expressly consider the findings of Dr. Tabaddor. Implicit reasons for rejecting an examining physician's findings are improper because they are neither specific nor legitimate. Cotter, 642 F.2d at 706-07. Next, to the extent the ALJ may have implicitly rejected Dr. Tabaddor's medical opinion and explicitly rejected Dr. Artinyan's medical opinion because they were procured in the context of plaintiff's workers' compensation case, that was not a valid reason for rejection. See Booth v. Barnhart, 181 F.Supp.2d 1099, 1105 (C.D. Cal. 2002). Notwithstanding the differences between the disability ratings in workers' compensation and social security cases,[9] "the ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding." Id.; see also Coria, 750 F.2d at 247 ("the ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the worker's compensation claim by the same standards that s/he uses to evaluate medical findings in reports made in the first instance for the Social Security claim"); Bosley v. Shalala, 879 F.Supp. 296, 304 (W.D.N.Y. 1995) ("the ALJ was *not* entitled to ... disregard, or neglect to articulate reasons for rejecting, either the opinions or the objective medical findings contained in" the treating doctor's report, even though the report was prepared for workers' compensation purposes).

Further, the ALJ erred in rejecting Dr. Artinyan's opinion on the basis that he did not give a "conclusive or final opinion regarding [plaintiff's] physical abilities" in opining that plaintiff was "temporarily totally disabled." [AR at 27.] To the extent it was unclear from the medical evidence the duration of the impairments assessed by Dr. Artinyan, the ALJ had an affirmative "duty to fully and fairly develop the record and to assure that the claimant's interests are considered ... even when the claimant is represented by counsel." Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir.

---

[9]   "[T]here are different statutory tests for disability under worker's compensation statutes and under the Social Security Act." Coria v. Heckler, 750 F.2d 245, 247 (3rd Cir. 1984). "Social Security disability conclusions are not geared to a percentage of disability, as are worker's compensation disability conclusions." Id. Further, the categories of work under the Social Security disability scheme are measured primarily by step increases in lifting capacities, while the categories of work under the workers' compensation system are based on a claimant's ability to sit, stand, or walk for most of the day. See Desrosiers v. Secretary of Health & Human Services, 846 F.2d 573, 576 (9th Cir. 1988).

2003) (ellipsis in original) (citation omitted).  If evidence from a medical source is inadequate to determine if the claimant is disabled, an ALJ is required to recontact the medical source, including a treating physician, to determine if additional needed information is readily available.  See 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1).  Here, there is no indication in the ALJ's decision or the record that he attempted to contact Dr. Artinyan to clarify his opinion concerning the duration of plaintiff's limitations.

The RFC assessment must be made "based on all the relevant evidence in [the] case record" (20 C.F.R. §§ 404.1545, 416.945), including the claimant's medical history, medical signs, laboratory findings, recorded observations, and medical source statements.  See SSR 96-8p; Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account [all of] a claimant's limitations is defective").  Because the ALJ failed to provide proper reasons for rejecting the findings of Dr. Artinyan concerning plaintiff's physical limitations, and provided no reasons for implicitly rejecting the mental limitations assessed by Dr. Tarlyian and the physical limitations assessed by Dr. Tabaddor, the RFC, which did not include the limitations assessed by these doctors, was defective.  Accordingly, remand is warranted for the ALJ to reconsider plaintiff's RFC once the medical evidence has been evaluated as set forth herein.[10]

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir.

---

[10]   As the ALJ's reconsideration of the medical opinion evidence discussed herein may affect the ALJ's assessment of plaintiff's credibility, the ALJ is instructed to reassess plaintiff's credibility once the medical evidence has been reconsidered.

1984).  In this case, remand is appropriate in order for the ALJ to reconsider the medical findings, the RFC determination, and plaintiff's credibility.[11]

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: August 25, 2010

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[11]   As the Court finds remand warranted for the reasons expressed herein, the Court exercises its discretion not to resolve plaintiff's contention that the ALJ erred in failing to solicit hearing testimony from a medical expert.  [See JS at 5.]  The Court notes, however, that an ALJ is generally not <u>obligated</u> to receive medical expert testimony.  <u>See</u> 20 C.F.R. §§ 404.1527(f)(2)(iii), 416.927(f)(2)(iii) (an ALJ "<u>may</u> ... ask for and consider opinions from medical experts on the nature and severity of [a claimant's] impairment(s)") (emphasis added); <u>see</u>, <u>e.g.</u>, <u>Kruchek v. Barnhart</u>, 125 Fed.Appx. 825, 827 (9th Cir. 2005) (noting that the word "may" in 20 C.F.R. § 1527(f)(2)(iii) "indicates that use of [a medical expert] for ... [a disability] determination is permissive, not mandatory"); <u>Madis v. Massanari</u>, 2001 WL 1485699, *1 (5th Cir. Nov. 5, 2001) ("Although an ALJ may ask for the opinion of a medical expert at a hearing, it is not mandatory.").  However, the Ninth Circuit has recognized an exception to an ALJ's otherwise permissive use of medical expert testimony where "the medical evidence is not definite concerning the onset date [of disability] and medical inferences need to be made."  <u>Armstrong v. Comm'r of Soc. Sec. Admin.</u>, 160 F.3d 587, 590 (9th Cir. 1998) (citation and quotations omitted).  In such a case, "SSR 83-20 requires the [ALJ] to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination."  <u>Id.</u>; <u>see also</u> <u>Sam v. Astrue</u>, 550 F.3d 808, 811 (9th Cir. 2008) (an ALJ has a duty to solicit medical expert testimony when "there was either an explicit ALJ finding or substantial evidence that the claimant was disabled at some point ... thus raising a question of onset date").